# UNTED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| United States of America | : | Case Number: 1:18-cv-681 |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| Unknown Spouse, Heirs, | : |  |
| Devisees, Legatees, Executors, | : | **COMPLAINT** |
| Administrators, and Assigns, | : | **IN FORECLOSURE** |
| If Any, of Ruby E. Bullock, Deceased | : |  |
| Address Unknown | : |  |
|  | : |  |
| Robert A. Goering, | : |  |
| Treasurer of Hamilton County, Ohio | : |  |
|  | : |  |
| Defendants. | : |  |

1.  Jurisdiction is founded upon 28 U.S.C. §1345.

2.  On or about October 3, 2003, Ruby E. Bullock executed and delivered to Financial Freedom Senior Funding Corporation, a Subsidiary of Lehman Brothers Bank, FSB, its successors and assigns, an Adjustable Rate Open End Mortgage (Home Equity Conversion) (hereinafter "Note"). A copy of the Adjustable Rate Note is attached hereto as Exhibit A fully incorporated and made a part hereof by this reference. Under the terms of the Uniform Covenants Borrower shall pay when due the principal of $120,000.00 and interest on, the debt evidenced by the Note.

3.  BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated October 24, 2003 ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan

Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on February 16, 2074. Interest will be charged on unpaid principal at the rate of TWO AND SEVENTY-NINE HUNDREDTHS percent (2.790%) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

4.   Prior to the execution of the note and mortgage, Ruby E. Bullock was duly advised and counseled regarding the United States' Home Equity Conversion Mortgage ("HECM") loan program, which program is regulated and set forth in 24 C.F.R. Part 206, et seq. and all subsequent handbooks (4330.1 REV-5), mortgage letters, etc. as set forth by the Secretary of the Department of Housing and Urban Development. The purpose of this program is set forth in 24 C.F.R. §206.1, and as " . . . set out in Section 255(a) of the National Housing Act, Public Law 73 - 479, 48 STAT. 1246 (12 U.S.C. §1715z-20)"; being further regulated by handbook 4330.01 Rev. 5 and all subsequent mortgage letters as issued and set forth by the Secretary of the Department of Housing and Urban Development.

5.   Simultaneously with the execution and delivery of the Note, and in order to secure the payment of said Note, Ruby E. Bullock executed and delivered to Financial Freedom Senior Funding Corporation, a Subsidiary of Lehman Brothers Bank, FSB, its successors and assigns, an Adjustable Rate Open-End Mortgage ("mortgage"), a copy of which is attached hereto as Exhibit B. Said Mortgage was duly recorded on December 3, 2003 in Mortgage Record Volume 9470, Page 4647, in the Recorder's Office, Hamilton County, Ohio.

6.   The United States of America, acting through the Secretary of the Department of Housing and Urban Development is the owner and holder of said note by virtue of a Corporation Assignment of Mortgage from Financial Freedom Senior Funding Corporation, a Subsidiary of Lehman Brothers Bank, FSB, its successors and assigns, to the Secretary of the Department of

Housing and Urban Development recorded on April 13, 2010, in Mortgage Record Volume 11405, Page 931, in the Recorder's Office, Hamilton County, Ohio. A copy of said Assignment of Security Instrument is attached hereto as Exhibit C.

7.   Ruby E. Bullock died intestate on October 11, 2013. A copy of Ruby E. Bullock's Certificate of Death is attached hereto as Exhibit D.

8.   No probate estate has been created by the filing of a Petition in the Probate Court of Hamilton County, Ohio for Ruby E. Bullock.

9.    Under the terms of Paragraph 7 of the Note (Exhibit A) and Paragraph 9 of the Mortgage (Exhibit B), payment in full was required on the date of death of Ruby E. Bullock. Consistent with said terms and default, full and immediate payment is due and demanded. Said mortgage has become absolute and the United States is entitled to a foreclosure of the same and the equity of redemption therein.

10.   The following sums are due to the United States of America, acting through the Secretary of Housing and Urban Development on the mortgage indebtedness of Ruby E. Bullock, Deceased:

| | | |
|---|---|---|
| (A) | Unpaid Principal | $ 54,613.04 |
| (B) | Interest accrued in accordance with adjustable rate note/mortgage: initial signing rate of 3.290% per annum and adjustable every year thereafter | $ 31,349.55 |
| (C) | MIP advances for tax payments and insurance set forth in 24 C.F.R. §§206.27 and 206.103, et seq. and HUD handbook 4330.1 (13-14), et seq. | $  7,229.55 |
| (D) | Service Charge set forth in HUD handbook 4330.1 (13-15) | $   6,090.00 |
| | TOTAL (as of March 21, 2018) | **$99,282.14** |

11.     As of March 21, 2018, there is a total amount of $99,282.14 due and owing to Plaintiff. A copy of the Statement of Account is attached hereto as Exhibit E.

12.     Defendants, Unknown Spouse, Heirs, Devisees, Legatees, Executors, Administrators, and Assigns, if any, of Ruby E. Bullock, Deceased, have or may claim to have an interest in the real property described in Exhibit B.

13.     The Defendant, Robert A. Goering, Treasurer of Hamilton County, Ohio, has or may claim some lien or interest in said mortgaged premises by reason of unpaid real estate taxes or assessments thereon.

WHEREFORE, the United States of America prays:

a.    That the Court find there is due and owing to the United States of America on the mortgage indebtedness of Ruby E. Bullock, Deceased, the principal amount of $54,613.04 (including tax, insurance advances, service fees and repairs set aside), and interest in the amount of $31,349.55, totaling $99,282.14 together with interest at the rate of 3.290% from March 21, 2018, to the date of sale, plus interest thereafter at the legal rate, and all costs, disbursements and expenses (see Statement of Account, attached hereto as Exhibit E);

b.    That the Court find said mortgage of the United States of America is a good, valid and subsisting lien against the real property described in said mortgage;

c.    That the Court find the United States of America is entitled to the foreclosure of said mortgage and the equity of redemption therein;

d.    That Defendants herein named be required to establish their respective claims and liens, if any, pertaining to the real property described in Exhibit B, or be forever barred from asserting the same;

e.    For an order foreclosing the mortgage and equity of redemption as set forth herein,

determining the validity of all other claims and liens against the mortgaged premises, and subjecting the mortgaged premises to sale free and clear of the liens and claims of the parties to this action, for the purpose of satisfying the claim of the United States of America;

f.   That the priority of liens against the real property be determined by the Court, and the proceeds of sale of said real property, after proper court costs, be distributed among the owners and holders of liens against said real property in their order of priority as determined by the Court; and

g.   For all further and proper relief, both legal and equitable, to which the parties hereto may be entitled.

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney


s/Nicholas J. Pantel
NICHOLAS J. PANTEL (0021329)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6972
E-mail: Nicholas.Pantel@usdoj.gov

*1*

# ADJUSTABLE RATE NOTE
# (HOME EQUITY CONVERSION)

OCTOBER 24, 2003

**PROPERTY ADDRESS**                                    **FHA Case Number: 4113684409-952**

1850 BALTIMORE AVE.
CINCINNATI, OHIO 45225
HAMILTON COUNTY

## 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Lender" means Financial Freedom Senior Funding Corporation, a Subsidiary of Lehman Brothers Bank, FSB and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated OCTOBER 24, 2003 ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on FEBRUARY 16, 2074. Interest will be charged on unpaid principal at the rate of TWO AND SEVENTY NINE HUNDREDTHS percent (2.790%) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

### (B) Place
Payment shall be made at 500 Northridge Road, #500, Atlanta, Georgia 30350 or any such other place as Lender may designate in writing by notice to Borrower.

### (C) Limitation of Liability
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of assignment.

## 5. INTEREST RATE CHANGES

### (A) Change Date
The interest rate may change on the first day of JANUARY, 2004 and on that day of each succeeding month. Change Date means each date on which the interest rate could change.

### (B) The Index
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

### (C) Calculation of Interest Rate Changes
Before each Change Date, Lender will calculate a new interest rate by adding a margin of one and fifty hundredths percentage points (1.50%) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

# EXHIBIT A

**(D) Limits on Interest Rate Changes**
The interest rate will never increase above TWELVE AND SEVENTY NINE HUNDREDTHS PERCENT.

**(E) Notice of Changes**
Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

**(F) Effective Date of Changes**
A new interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

**6. BORROWER'S RIGHT TO PREPAY**
A Borrower receiving monthly payments under the Loan Agreement has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that porion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be created to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

**7. IMMEDIATE PAYMENT IN FULL**
**(A) Death or Sale**
Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i)     A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii)    All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower (or retaining a beneficial interest in a trust with such an interest in the Property), or (c) a life estate in the Property.

**(B) Other Grounds**
Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i)     The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of a least one other Borrower;

(ii)    For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii)   An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**
If Lender has required immediate payment in full, as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interest in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO SECOND NOTE

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

    (i)      This Note is assigned to the Secretary; or

    (ii)     The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments made by the Secretary, including interest on the payments, shall be included in the debt.

**(C) Effect on Borrower**

Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:

    (i)      Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

    (ii)     Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____

RUBY E. BULLOCK (Borrower)

10-24-03

Date

All right, title and interest of the undersigned to the within credit instrument is hereby assigned to the secretary of Housing and Urban Development of Washington D.C., his/her successors and assigns. Financial Freedom Acquisition LLC

_____ Vice President

PAY TO THE ORDER

WITHOUT RECOURSE
FINANCIAL FREEDOM

-3-

**VICE-PRESIDENT**

# MORTGAGE
## (HOME EQUITY CONVERSION)



*2*

6000098211
FL093C

Requested by and Return to:
Title Stream
2081 Hutton Dr., Suite 201
Carrollton, TX 75006
Attn: RECORDING   20414

Rebecca Prem Groppe
Hamilton County Recorders Office
Doc #: 03-0565959 Type: MT
Filed: 12/03/03 11:23:48 AM $76.00
Off.Rec.: 09470   04647   F 8   873

**FHA Case Number:** 4113684409-952
**LOAN NO:** 4500676

## STATE OF OHIO  ADJUSTABLE RATE OPEN-END MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on OCTOBER 24, 2003. The mortgagor is RUBY E. BULLOCK, whose address is 1850 BALTIMORE AVE., CINCINNATI, OHIO 45225 ("Borrower"). This Security Instrument is given to Financial Freedom Senior Funding Corporation, a Subsidiary of Lehman Brothers Bank, FSB, which is organized and existing under the laws of the State of Delaware, and whose address is 500 Northridge Road, #500, Atlanta, Georgia 30350 ("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications, up to a maximum principal amount of $120,000.00; (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full debt, including all amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on FEBRUARY 16, 2074. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in HAMILTON County, Ohio:

The real property located at the address 1850 BALTIMORE AVE., CINCINNATI, OHIO 45225, in the county of HAMILTON, state of OHIO, described more fully on Exhibit A attached to this Mortgage.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.
**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender,

**EXHIBIT B**

9470   4647   -1-

unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) and shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted.

Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the Loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

9470    4648        -2-

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph are obligatory and shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**
    **(a) Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:
        (i)     A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

        (ii)    All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred an no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower (or a beneficial interest in a trust with such an interest in the Property), or (c) a life estate in the Property.

    **(b) Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval by an authorized representative of the Secretary, if:
        (i)     The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

        (ii)    For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

        (iii)   An obligation of the Borrower under this Security Instrument is not performed.

    **(c) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in subparagraphs (a) and (b) of this Paragraph 9(a)(ii) or (b) occur.
    **(d) Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under this Paragraph 9(a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:
        (i)     Correct the matter which resulted in the Security Instrument coming due and payable; or

        (ii)    Pay the balance in full; or

        (iii)   Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

        (iv)   Provide the Lender with a deed in lieu of foreclosure.

9470     4649         -3-

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within eight (8) months from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to eight (8) months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgements.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgement against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with a foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if:(i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. First Lien Status**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

9470    4650

**13. Relationship to Second Security Instrument.**

**(a) Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, unless otherwise provided by the Secretary, the Secretary has required Borrower to execute a Second Note and Second Security Instrument on the Property.

**(b) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i)     This Security Instrument is assigned to the Secretary; or

(ii)    The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

**(c) Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i)     Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii)    Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

**(d) No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's Notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

9470    4651                    -5-

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, costs of title evidence.

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of TWO AND SEVENTY NINE HUNDREDTHS percent (2.790%) which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, ("Index") plus a margin. The Index is published in the Federal Reserve Bulletin and made available by the United States Treasury Department in Statistical Release H.15 (519). If the Index is no longer available, Lender will be required to use any index prescribed by the Department of Housing and Urban Development. The new index will have a historical movement substantially similar to the original index, and the new index and margin will result in an annual percentage rate that is substantially similar to the rate in effect at the time the original index becomes unavailable.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on JANUARY 1, 2004, and on the first day of _____ and on that day of each succeeding year, or ____X_____ the first day of each succeeding month (Change Date) until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate).

    _____    Annually Adjusting Variable Rate Feature.

    ___X___    Monthly Adjusting Variable Rate Feature -  The Calculated Interest Rate will never increase above TWELVE AND SEVENTY NINE HUNDREDTHS PERCENT.

The Calculated Interest Rate will be adjusted if necessary to comply with the rate limitation(s) described above and will be in effect until the next Change Date. At any change date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

9470      4652

**24. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees, and other charges, shall be obligatory.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check all riders that are applicable].

☐      Condominium Rider      ☐      PUD Rider

☐      Shared Appreciation Rider      ☐      Other:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses: _Michelle Y. Graves_ _____

Signature: _Ruby E. Bullock_ _____
RUBY E. BULLOCK (Borrower)

State of Ohio
County of _Hamilton_

The foregoing instrument was acknowledged before me this _24_ day of _October_, 20 _03_ by RUBY E. BULLOCK.

_Carol Kunstman_

_Notary_
Title or Rank

_Commission expires 7/16/08_
Serial Number, if any

This Instrument was prepared by: _Megan Akers, Bay Docs, 1603 Novato Blvd. #3 Novato, CA 94947_

9470    4653

Case: 1:18-cv-00681-SJD Doc #: 1-2 Filed: 09/27/18 Page: 8 of 8 PAGEID #: 16

# Exhibit "A"

SITUATED IN THE CITY OF CINCINNATI, COUNTY OF HAMILTON AND STATE OF OHIO, IN SECTION 26, TOWNSHIP 3, FRACTIONAL RANGE 2 OF THE MIAMI PURCHASE, BEGINNING AT A POINT IN THE NORTHERLY LINE OF BALTIMORE PIKE, WHICH POINT IS 186.62 FEET WEST OF THE WEST LINE OF GELGER STREET; THENCE WESTWARDLY, ALONG THE NORTHERLY LINE OF BALTIMORE AVENUE, A DISTANCE OF 52.31 FEET TO A POINT; THENCE NORTHERLY, ALONG THE EASTERLY LINE OF A LOT CONVEYED TO JOSEPHINE DREYER BY THE HEIRS OF J. AUGUST DREYER, DECEASED, TO A POINT IN THE SOUTH LINE OF LOT NO. ONE HUNDRED FIFTYSEVEN (157) OF JOHN GEIGER'S ESTATE SUBDIVISION, AS RECORDED IN PLAT BOOK 6, PAGE 116, HAMILTON COUNTY, OHIO RECORDS; THENCE EASTWARDLY, ALONG THE SOUTHERLY LINE OF JOHN GEIGER'S ESTATE SUBDIVISION, AFOREMENTIONED, AND AT RIGHT ANGLES TO SAID POINT, A DISTANCE OF 52.28 FEET TO A POINT; THENCE AT RIGHT ANGLES TO SAID POINT, A DISTANCE OF 96.44 FEET. MORE OR LESS, TO BALTIMORE PIKE, THE POINT OF BEGINNING. BEING THE SAME PREMISES CONVEYED TO THE GRANTOR, BERTHA STEPHANO, BY EVA POTTMANN AND WILLIAM F. POTTMANN, HER HUSBAND, BY DEED RECORDED IN BOOK 7363, PAGE 318 OF THE DEED RECORDS OF HAMILTON COUNTY, OHIO.

APN: 201-0039-03997-00
TS Order Number: 10-00020414

9470    4654

RECORDING DOCUMENT
RECORDING FEE
( 317.114 )

**RECORDING REQUESTED BY:**
Financial Freedom Acquisition LLC

WHEN RECORDED RETURN TO:
First American Document Solutions
450 E. Boundary St
Chapin, SC 29036
Attn: Lien Release
# 10019299

PREPARED BY: Ninfa Acosta
Address: 2900 Esperanza Crossing
Austin, TX 78758
Telephone Number: (512) 918-7051

Wayne Coates
Hamilton County Recorders Office
Doc #: 10-0040465 Type: AM
Filed: 04/13/10 01:28:35 PM  $28.00
Off.Rec.: 11405   00931   F  2   284

P11405000931PD

FHA Loan Number: 4113684409

## CORPORATION ASSIGNMENT OF MORTGAGE
[FFSFC TO FFA]

FOR VALUE RECEIVED, FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, a Delaware corporation ("FFSFC") whose address is 2900 Esperanza Crossing, Austin, TX 78758, does hereby grant, sell, assign, transfer and convey, unto FINANCIAL FREEDOM ACQUISITION LLC, a Delaware limited liability company, whose address is 1 BANTING, IRVINE, CA 92618, all of FFSFC's right, title and interest in, to and under that certain MORTGAGE dated OCTOBER 24, 2003 and executed by RUBY E. BULLOCK, to and in favor of FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, A SUBSIDIARY OF LEHMAN BROTHERS BANK, FSB, and recorded on DECEMBER 3, 2003, in HAMILTON County, State of OHIO, [in Book 9470, at Page 4647] [as [Document # 03-0565959] (the "MORTGAGE"), which encumbers property described on **Exhibit A,** attached hereto and incorporated herein by this reference.

Property address: 1850 Baltimore Ave. Cincinnati, OH 45225

TOGETHER WITH the note(s) described or referred to in the MORTGAGE, the money due or to become due thereon with interest, and all rights accrued or to accrue under said MORTGAGE.

THE FOREGOING ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, BY FFSFC, except that FFSFC hereby warrants that: (a) no act or omission of FFA has impaired the validity and priority of the said security instruments; (b) the security instrument is a good and valid first lien and is prior to all mechanics' and materialmen's liens filed of record regardless of when such liens attach, and prior to all liens, encumbrances, or defects which may arise except such liens or other matters as have been approved by the Assignee hereunder; (c) the sum of $120,000.00 together with the interest from the 24th day of October, 2003, at the rate of 2.790%, computed as provided in the credit instrument, is actually due and owing under the said credit instrument and (d) FFA has a good right to assign the said security and credit instruments.

IN WITNESS WHEREOF, the undersigned have executed this Corporation Assignment of MORTGAGE on _3-12-10_.

FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, a Delaware corporation

By: _____
Name: CAROL NORTON
Title: Attorney-in-Fact

STATE OF TEXAS
COUNTY OF TRAVIS

On 3/12/2010 before me, BPllie Ann Alferez notary public in and for TRAVIS County, in the State of TEXAS, personally appeared CAROL NORTON, attorney-in-fact for FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, C/O 2900 Esperanza Crossing, Austin, TX 78758, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that She executed the same in her authorized capacity, and that by her signature on the instrument the person, or entity upon behalf of which the person acted executed the instrument.

WITNESS my hand and official seal

Signature _____


BILLIE ANN ALFEREZ
Notary Public, State of Texas
My Commission Expires
December 02, 2013

11405    931

PI 2

**EXHIBIT C**

PRELIMINARY TITLE TO INSURE                                    TS Order No.: 10-00020414

## Exhibit "A"

SITUATED IN THE CITY OF CINCINNATI, COUNTY OF HAMILTON AND STATE OF OHIO, IN SECTION 26, TOWNSHIP 3, FRACTIONAL RANGE 2 OF THE MIAMI PURCHASE, BEGINNING AT A POINT IN THE NORTHERLY LINE OF BALTIMORE PIKE, WHICH POINT IS 186.62 FEET WEST OF THE WEST LINE OF GELGER STREET; THENCE WESTWARDLY, ALONG THE NORTHERLY LINE OF BALTIMORE AVENUE, A DISTANCE OF 52.31 FEET TO A POINT; THENCE NORTHERLY, ALONG THE EASTERLY LINE OF A LOT CONVEYED TO JOSEPHINE DREYER BY THE HEIRS OF J. AUGUST DREYER, DECEASED, TO A POINT IN THE SOUTH LINE OF LOT NO. ONE HUNDRED FIFTYSEVEN (157) OF JOHN GEIGER'S ESTATE SUBDIVISION, AS RECORDED IN PLAT BOOK 6, PAGE 116, HAMILTON COUNTY, OHIO RECORDS; THENCE EASTWARDLY, ALONG THE SOUTHERLY LINE OF JOHN GEIGER'S ESTATE SUBDIVISION, AFOREMENTIONED, AND AT RIGHT ANGLES TO SAID POINT, A DISTANCE OF 52.28 FEET TO A POINT; THENCE AT RIGHT ANGLES TO SAID POINT, A DISTANCE OF 96.44 FEET, MORE OR LESS, TO BALTIMORE PIKE, THE POINT OF BEGINNING. BEING THE SAME PREMISES CONVEYED TO THE GRANTOR, BERTHA STEPHANO, BY EVA POTTMANN AND WILLIAM F. POTTMANN, HER HUSBAND, BY DEED RECORDED IN BOOK 7363, PAGE 318 OF THE DEED RECORDS OF HAMILTON COUNTY, OHIO.

APN: 201-0039-03997-00
TS Order Number: 10-00020414

11405      932

VERIFY PRESENCE OF ODH WATERMARK — HOLD TO LIGHT TO VIEW

**Ohio Department of Health**
**VITAL STATISTICS**
**CERTIFICATE OF DEATH**

Reg. Dist. No. **31**
Primary Reg. Dist. No. **3101**
Registrar's No. **201300 3336**
State File No. **2013089452**

Type or print in permanent blue or black ink

**DECEDENT**

| 1. Decedent's Legal Name (include AKA's if any)(First Middle, LAST, suffix) | | 2. Sex | 3. Date of Death (Mo/Day/Year) |
|---|---|---|---|
| RUBY E BULLOCK | | Female | October 11, 2013 |

| 4. Social Security Number | 5a. Age (Years) | 5b. Under 1 Year Months Days | 5c. Under 1 day Hours Minutes | 6. Date of Birth (Mo/Day/Year) | 7. Birthplace (City and State or Foreign Country) |
|---|---|---|---|---|---|
| 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 | 89 | | | February 16, 1924 | SHELBYVILLE, KENTUCKY |

| 8a. Residence State | 8b. County | 8c. City or Town | |
|---|---|---|---|
| OHIO | HAMILTON | CINCINNATI | |

| 8d. Street and Number | | 8e. Apt. No. | 8f. Zipcode | 8g. Inside City Limits? |
|---|---|---|---|---|
| 1850 Baltimore Ave | | | 45225 | Yes |

| 9. Ever in US Armed Forces? | 10. Marital Status at Time of Death | 11. Surviving Spouse's Name (if wife, give name prior to first marriage) |
|---|---|---|
| No | Widowed (and not remarried) | |

| 12. Decedent's Education | 13. Decedent of Hispanic Origin | 14. Decedent's Race |
|---|---|---|
| COLLEGE, BUT NO DEGREE | No | Other - AMERICAN INDIAN/FILIPINO |

| 15. Father's Name | 16. Mother's Name (prior to first marriage) |
|---|---|
| NORMAN BULLOCK | MAYME M COCHRAN |

| 17a. Informant's Name | 17b. Relationship to Decedent | 17c. Mailing Address (Street and Number, City, State, Zip Code) |
|---|---|---|
| JACQUELINE D CHASE | Grand Daughter | 1850 Baltimore Ave |

| 18a. Place of Death | |
|---|---|
| Decedent's Home | CINCINNATI, OHIO 45225 |

| 18b. Facility Name (if not institution, give street & number) | 18c. City or Town, State and Zip Code | 18d. County of Death |
|---|---|---|
| 1850 Baltimore Ave | CINCINNATI, OH 45225 | HAMILTON |

**DISPOSITION**

| 19. Signature of Funeral Service Licensee or Other Agent | 20. License Number (of licensee) | 21. Name and Complete Address of Funeral Facility |
|---|---|---|
| | 008668 | NEWCOMER FH |

| 22a. Method of Disposition | 22b. Date of Disposition | |
|---|---|---|
| Burial | October 17, 2013 | |

| 22c. Place of Disposition (Name of Cemetery, Crematory, or other place) | 22d. Location (City/Town and State) | 3300 PARKCREST LANE |
|---|---|---|
| Baltimore Pike Cemetery | CINCINNATI, OH | CINCINNATI, OH 45211 |

**REGISTRAR**

| 23. Registrar's Signature | 24. Date Filed |
|---|---|
| Camille Jones MD | OCT 21 2013 |

| 25a. Name of Person Issuing Burial Permit | 25b. District No. | 25c. Date Burial Permit Issued |
|---|---|---|
| JONES, CAMILLE | 3101 | 10-14-13 |

**CERTIFIER**

25d. Certifier
(Check only one)
☒ Certifying Physician
☐ Coroner

To the best of my knowledge, death occurred at the time, date, and place; and due to the cause(s) and manner stated.
On the basis of examination and/or investigation, in my opinion, death occurred at the time, date, and place; and due to the cause(s) and manner stated.

| 26b. Time of Death | 26c. Date Pronounced Dead (Mo/Day/Year) | 26d. Was case referred to coroner? |
|---|---|---|
| 12:23 pm | 10-11-2013 | No |

| 26e. Signature and Title of Certifier | 26f. License number | 26g. Date Signed |
|---|---|---|
| Frederick Crall V | 35.047194 | 10-15-2013 |

**CAUSE OF DEATH**

27. Name (Last, First, Middle) and Address of Person who Completed Cause of Death)
CRALL, FREDERICK VINCENT, Visiting Physicians CINCINNATI, OH 45212

28. Part I. Enter the diseases, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line. Type or print in permanent blue or black ink.

| | | Approximate Interval Between Onset and Death |
|---|---|---|
| Immediate Cause (Final disease or condition resulting in death) | a. Senile Dementia | years |
| Sequentially list conditions, if any, leading to immediate cause. | b. Due to (or as Consequence of) | |
| Enter Underlying Cause (Disease or Injury that initiated events resulting in a death) | c. Due to (or as Consequence of) | |
| | d. Due to (or as Consequence of) | |

Part II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I.

| 29a. Was An Autopsy Performed? | 29b. Were Autopsy Findings Available Prior To Completion Of Cause of Death? |
|---|---|
| ☐ Yes ☒ No | ☐ Yes ☐ No ☐ Not Applicable |

| 30. Did Tobacco Use Contribute to Death? | 31. If Female, Pregnancy Status | 32. Manner of Death |
|---|---|---|
| ☐ Yes ☐ Unknown | ☒ Not pregnant within past year ☐ Pregnant at time of death ☐ Not pregnant, but pregnant within 42 days of death ☐ Not pregnant, but pregnant 43 days to 1 year before death ☐ Unknown if pregnant within the past year | ☒ Natural ☐ Homicide ☐ Accident ☐ Pending Investigation ☐ Suicide ☐ Could not be determined |
| ☐ No ☒ Probably | | |

| 33a. Date of Injury (Mo/Day/Year) | 33b. Time of Injury | 33c. Place of Injury (e.g., Decedent's home, construction site, restaurant, wooded area) | 33d. Injury at Work? ☐ Yes ☐ No |
|---|---|---|---|
| | | | |

33e. Location of Injury (Street and Number and Rural Route Number, City or Town, State)

| 33f. Describe How Injury Occurred: | 33g. If Transportation Injury, Specify: ☐ Driver/Operator ☐ Pedestrian ☐ Passenger ☐ Other: |
|---|---|

HEA 2724 Rev. 01/07

**EXHIBIT D**

I HEREBY CERTIFY THIS DOCUMENT IS AN EXACT COPY OF THE RECORD ON FILE WITH THE OHIO DEPARTMENT OF HEALTH.

MAY 29 14 | 5 | 3 74

JUDITH B
OFFICE
WITNESS

REV. 6/2009

# Statement of Account

**U.S. Department of Housing and Urban Development**
Office of Finance and Accounting

| HUD Field Office |
|---|

| To | HUD/OFFICE OF GENERAL COUNSEL |
|---|---|

| 1. FHA Case Number | 2. Account Number |
|---|---|
| 411-3684409 | 411-3684409 |

| 3. Mortgagor/Owner | 4. Social Security Number |
|---|---|
| RUBY E. BULLOCK | XXX-XX-0168 |

| 5. Co-Mortgagor | 6. Social Security Number |
|---|---|

| 7. Name of original mortgagor if different from above | 8. Property Address |
|---|---|
|  | 1850 BALTIMORE AVENUE<br>CINCINNATI, OH 45225 |

## Part 1. General Account Information

| Original Mortgage Amount | Unpaid Principal Balance | Escrow Balance | Interest Rate | Term |
|---|---|---|---|---|
|  | $54,613.04 |  | 3.290% |  |

| Type of mortgage | Last payment applied | Date | Date of oldest unpaid interest installment |
|---|---|---|---|
| HECM |  |  |  |

| Type of Tax | Year | Amount | Date sent to RAD | Date Deducted from Account |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**Please Note:** The information provided may change subject to un-collectibles from previous owner or foreclosures of other costs incurred but not posted against the account.

## Part 2. Assumption Information / Bring Current Information

Other mortgage is to be assumed: 1. Remit certified funds to bring account current; 2. Provide a copy of the conveyance document; 3. Provide letter from seller authorizing transfer of escrow funds to buyer (no escrow funds will be refunded); 4. Provide verification of Hazard Insurance coverage.

| Bring Current Amount | |
|---|---|
| Principal | $54,613.04 |
| Interest | $31,349.55 |
| Tax Escrow Required | |
| Service Charge | $6,090.00 |
| Late Charge | |
| Tax Advance | |
| Other (specify) MIP | $7,229.55 |
| Interest on Advances | |
| Total to Bring Current as of: 03/21/2018 | $99,282.14 |
| Current Monthly Payment Principal and Interest | |
| Tax Escrow | |
| Service Charge | |
| Total Monthly Payment (See back of page if mortgage is 235) | |

## Part 3. Payoff Information

| Principal Balance | $54,613.04 |
|---|---|
| Interest Due | $31,349.55 |
| Service Charge | $6,090.00 |
| Late Charge | |
| Returned Check Charge | |
| Advance Amount | |
| Tax Escrow Applied | |
| Other (specify) MIP | $7,229.55 |
| Interest on Advances | |
| Taxes Paid but Not Posted | |
| Total Payoff Amount as of: 03/21/2018 | $99,282.14 |
| Per Diem Service Charge | |
| Per Diem Interest | $10.31 |

| Prepared by | Title | Date |
|---|---|---|
| REBECCA L. MIDDLEBROOKS | CASH MANAGEMENT | 03/21/2018 |

I hereby certify that the above is a true and correct statement of the unpaid balance due on the Note and Mortgage (or Deed of Trust) identified above and held by the Secretary of the U.S. Department of Housing and Urban Development.

**Warning:** HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)

| Certified by | Title | Date |
|---|---|---|
| Kaye James | CASH MANAGEMENT | 03/21/2018 |

form **HUD-698** (1/89)

**EXHIBIT E**

JS 44   (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

**DEFENDANTS**

**(b)**  County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:     IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1  U.S. Government
  Plaintiff
- ❏ 2  U.S. Government
  Defendant
- ❏ 3  Federal Question
  *(U.S. Government Not a Party)*
- ❏ 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance<br>❏ 120 Marine<br>❏ 130 Miller Act<br>❏ 140 Negotiable Instrument<br>❏ 150 Recovery of Overpayment & Enforcement of Judgment<br>❏ 151 Medicare Act<br>❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>❏ 153 Recovery of Overpayment of Veteran's Benefits<br>❏ 160 Stockholders' Suits<br>❏ 190 Other Contract<br>❏ 195 Contract Product Liability<br>❏ 196 Franchise | **PERSONAL INJURY**<br>❏ 310 Airplane<br>❏ 315 Airplane Product Liability<br>❏ 320 Assault, Libel & Slander<br>❏ 330 Federal Employers' Liability<br>❏ 340 Marine<br>❏ 345 Marine Product Liability<br>❏ 350 Motor Vehicle<br>❏ 355 Motor Vehicle Product Liability<br>❏ 360 Other Personal Injury<br>❏ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>❏ 365 Personal Injury - Product Liability<br>❏ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>❏ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>❏ 370 Other Fraud<br>❏ 371 Truth in Lending<br>❏ 380 Other Personal Property Damage<br>❏ 385 Property Damage Product Liability | ❏ 625 Drug Related Seizure of Property 21 USC 881<br>❏ 690 Other | ❏ 422 Appeal 28 USC 158<br>❏ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>❏ 820 Copyrights<br>❏ 830 Patent<br>❏ 835 Patent - Abbreviated New Drug Application<br>❏ 840 Trademark | ❏ 375 False Claims Act<br>❏ 376 Qui Tam (31 USC 3729(a))<br>❏ 400 State Reapportionment<br>❏ 410 Antitrust<br>❏ 430 Banks and Banking<br>❏ 450 Commerce<br>❏ 460 Deportation<br>❏ 470 Racketeer Influenced and Corrupt Organizations<br>❏ 480 Consumer Credit<br>❏ 485 Telephone Consumer Protection Act<br>❏ 490 Cable/Sat TV<br>❏ 850 Securities/Commodities/ Exchange<br>❏ 890 Other Statutory Actions<br>❏ 891 Agricultural Acts<br>❏ 893 Environmental Matters<br>❏ 895 Freedom of Information Act<br>❏ 896 Arbitration<br>❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>❏ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | |
| ❏ 210 Land Condemnation<br>❏ 220 Foreclosure<br>❏ 230 Rent Lease & Ejectment<br>❏ 240 Torts to Land<br>❏ 245 Tort Product Liability<br>❏ 290 All Other Real Property | ❏ 440 Other Civil Rights<br>❏ 441 Voting<br>❏ 442 Employment<br>❏ 443 Housing/ Accommodations<br>❏ 445 Amer. w/Disabilities - Employment<br>❏ 446 Amer. w/Disabilities - Other<br>❏ 448 Education | **Habeas Corpus:**<br>❏ 463 Alien Detainee<br>❏ 510 Motions to Vacate Sentence<br>❏ 530 General<br>❏ 535 Death Penalty<br>**Other:**<br>❏ 540 Mandamus & Other<br>❏ 550 Civil Rights<br>❏ 555 Prison Condition<br>❏ 560 Civil Detainee - Conditions of Confinement | ❏ 710 Fair Labor Standards Act<br>❏ 720 Labor/Management Relations<br>❏ 740 Railway Labor Act<br>❏ 751 Family and Medical Leave Act<br>❏ 790 Other Labor Litigation<br>❏ 791 Employee Retirement Income Security Act | ❏ 861 HIA (1395ff)<br>❏ 862 Black Lung (923)<br>❏ 863 DIWC/DIWW (405(g))<br>❏ 864 SSID Title XVI<br>❏ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>❏ 870 Taxes (U.S. Plaintiff or Defendant)<br>❏ 871 IRS—Third Party 26 USC 7609 | |
| | | **IMMIGRATION**<br>❏ 462 Naturalization Application<br>❏ 465 Other Immigration Actions | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ❏ 1  Original Proceeding
- ❏ 2  Removed from State Court
- ❏ 3  Remanded from Appellate Court
- ❏ 4  Reinstated or Reopened
- ❏ 5  Transferred from Another District *(specify)*
- ❏ 6  Multidistrict Litigation - Transfer
- ❏ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❏  CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:     ❏ Yes    ❏No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #

AMOUNT

APPLYING IFP

JUDGE

MAG. JUDGE

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |  |
|---|---|---|---|
|  | ) |  |  |
|  | ) |  |  |
|  | ) |  |  |
| _____ | ) |  |  |
| *Plaintiff(s)* | ) |  |  |
| v. | ) | Civil Action No. | 681 |
|  | ) |  |  |
|  | ) |  |  |
|  | ) |  |  |
| _____ | ) |  |  |
| *Defendant(s)* | ) |  |  |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____       _____

*Signature of Clerk or Deputy Clerk*